527 So.2d 894 (1988)
NATIONAL INDUSTRIES, INC., Appellant,
v.
COMMISSION ON HUMAN RELATIONS, et al., Appellees.
No. 87-1885.
District Court of Appeal of Florida, Fifth District.
June 23, 1988.
Ralph J. McMurphy of Green and Simmons, P.A., Ocala, for appellant.
Dana C. Baird and Danica W. Parker, Tallahassee, for appellee Com'n.
No Appearance for appellee Sharon Morand.
COBB, Judge.
Appellant, National Industries, Inc. (National), seeks review of an order of the State of Florida Commission on Human Relations (Commission) determining that National unlawfully discriminated against an employee, Sharon Morand, by terminating her employment based on her marital status.
Morand filed a petition for relief from an unlawful employment practice, claiming that she was improperly fired because of her marriage to a former National employee, Robert Morand. Following a hearing, the hearing officer entered a recommended order, determining that no discrimination occurred, and recommending that the Commission dismiss the petition and deny all relief. There was no transcript of the hearing; thus, the only factual record is contained in the hearing officer's factual findings. Those findings applicable to this appeal are as follows:
1. Sharon Morand was hired by National Industries, Inc. on July 14, 1985, to *895 work as an assembly line person in the manufacture of doors.
2. Petitioner resided approximately six blocks from the National Industries plant site.
3. At the time of the hiring of Petitioner, her husband, Robert Morand, was also employed by National.
4. Robert Morand was employed in an area of the plant different from the one in which his wife worked. Robert Morand had been employed by National for some time prior to March, 1985.
5. As a part of his employee benefits Robert Morand received a group insurance protection plan with an effective date of May 1, 1985. This plan indicated Mr. Morand's wife to be Sharon Morand.
6. National employees made allegations of sexual harassment, rudeness, obscene language, threats, and potential violence against Robert Morand.
7. To dispel the trouble National perceived Robert Morand to be, Respondent elected to offer Robert Morand either voluntary layoff or involuntary termination. It was hoped that the elimination of Robert Morand from the plant would ease employee concerns.
8. On or about August 23, 1985, Robert Morand voluntarily agreed to be laid off from his employment at National.
9. At the time of his layoff, Robert Morand was advised not to return to the plant property. While it is uncertain how many times Mr. Morand returned, it is clear he returned to the site on at least one occasion between August 23 and August 26, 1985.
10. On Monday, August 26, 1985, Officer Suess of the Ocala Police Department was summoned to the National plant site and was requested to be present during the termination of an employee. Officer Suess was requested to be there because National expected some unspecified problem as a result of the termination.
11. The Petitioner was brought to the office in the presence of Officer Suess, Lee Rector, and Jack Knight. Petitioner was advised by Rector that her employment was being terminated due to her relationship with Robert Morand.
12. On August 26, 1985, Sharon Morand was a probationary employee of the company who had performed all of her job duties in an acceptable manner.
13. At the time of her termination National knew that Sharon Morand was the wife of Robert Morand.
14. National elected to terminate Petitioner to eliminate the likelihood that Robert Morand would be on or near company property.
In addition to the factual findings cited above, the hearing officer made the following findings under the heading "Conclusions of Law":
In the case at issue, the Petitioner failed, as a matter of law, to establish that she was terminated because of her marital status. Whether she was married or not played no part in the Respondent's decisions to hire and then terminate Petitioner. The bulk of the credible evidence established that National terminated Petitioner because it believed Robert Morand would continue coming to the plant to see Petitioner. National had a legitimate interest in protecting company property and employees from Robert Morand. While this action would seem unfair to Sharon Morand, even `unfair' action is not an automatic violation of Section 760.10(1)(a) Florida Statutes. The Petitioner did not establish that her marital status was the motivating factor in the Respondent's action. National had a legitimate business concern which it resolved in what appeared to it to be the most effective and efficient manner. That such efficiency proved to be the fairly drastic measure of terminating Petitioner does not, absent more, constitute a violation of Chapter 760.
In the few states which construe `marital status' to include identity or situation of the spouse, the public policy for doing so is to protect the marriage union. But even under such a public policy rationale, discrimination on the basis of `marital status' would only occur in those circumstances where but for the marital relationship *896 the complained of action would not have taken place. See Thompson v. Board of Trustee, School District No. 12, Harlem, Blaine County, 627 P.2d 1229 (Mont. 1981). In the case at issue National would have terminated the Petitioner had she not been married to Robert Morand. It was not the Petitioner's status as married or unmarried that motivated her termination. National believed that the presence of Sharon Morand, married or unmarried, increased the likelihood of the presence of Robert Morand. Consequently, under the most liberal interpretation of `marital status' Petitioner failed to establish a prima facie case of discrimination within the meaning of Section 760.10(1)(a) Florida Statutes.

The Commission rejected the hearing officer's recommendation and found that Morand was improperly terminated based on her marital relationship. The Commission stated as follows:
In the instant case, Petitioner met her burden of proof by establishing a prima facie case of discrimination by showing that she was married, was performing her job in a satisfactory manner, and despite her satisfactory performance, she was discharged. Thereafter, Respondent conceded that Petitioner was terminated due to her relationship with Mr. Morand, but that such action was necessary `to eliminate the likelihood that Robert Morand would be on or near company property.'
As such, Respondent has admitted to an action which violates Florida law: Petitioner was terminated based solely on her marital relationship with Robert Morand. Nevertheless, Respondent raised an affirmative defense to its employment decision by stating that Petitioner's termination was necessary to prevent Mr. Morand from returning to Respondent's property.
It is well established that the burden of proof is upon the party asserting the affirmative of an issue before an administrative tribunal. Irvine v. Duval County Planning Commission, 466 So.2d 357, 360 (Fla. 1st DCA 1985); Florida Department of Transportation v. J.W.C. Company, Inc., 396 So.2d 778, 788 (Fla. 1st DCA 1981). Similarly, in Fenesy v. GTE Data Services, Inc., 3 FALR 1764-A (August 13, 1981), this Commission held that the burden is upon the applicant or employee to establish that the employer took adverse action against him based upon a prohibited basis but that once the discriminatory action has been shown, the burden is upon the employer to establish an affirmative defense which justifies its otherwise unlawful action.
The Hearing Officer made the following findings which relate to Respondent's affirmative defense:
National employees made allegations of sexual harrassment, rudeness, obscene language, threats, and potential violence against Robert Morand.
At the time of his layoff, Robert Morand was advised not to return to the plant property. While it is uncertain how many times Mr. Morand returned, it is clear he returned to the site on at least one occasion between August 23 and August 26, 1985.
National elected to terminate Petitioner to eliminate the likelihood that Robert Morand would be on or near company property.
As the Commission was not provided a copy of the transcript of the DOAH hearing, the Panel is limited to the Hearing Officer's findings of fact contained in the Recommended Order. Based thereon, the Commission concludes that Respondent has failed as a matter of law to meet its burden regarding its affirmative defense. Respondent failed to demonstrate that no alternate course of action was available and that it could not continue to function safely with Sharon Morand in its employ.
The Commission further held that National's concern for safety did not justify the unlawful discharge of an employee unless National could show that "no less discriminatory alternative course of action was available, and that the continued safe *897 functioning of Respondent's business necessitated the Petitioner's termination."
On appeal National contends that the Commission's determination that Morand's marital status was the cause of her termination ignores the hearing officer's findings of fact. The Commission counters that its reversal was proper, since only the hearing officer's erroneous conclusion of law as to what encompassed the protected marital status was rejected.
At issue in this case is the interpretation of section 760.10(1)(a), Florida Statutes (1985), which provides as follows:
(1) It is an unlawful employment practice for an employer:
(a) To discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status.

(Emphasis added.)
It is clear from a reading of the hearing officer's order that she found that Morand's marital status was not the motivating force behind her firing; rather, it was to prevent Robert Morand's presence at the work place. The Commission's order, on the other hand, states that Morand was terminated because of her relationship with Robert, and that since she was married to him, an unlawful discrimination occurred.
The Commission based its reversal on its determination that the hearing officer erred by imposing too restrictive an interpretation on the term "marital status." In its order, the Commission relied on its prior opinion in Owens v. Upper Pinellas Association for Retarded Citizens, 8 F.A.L.R. 438 (Fla. Commission on Human Relations 1985), affirmed without opinion, 495 So.2d 754 (Fla. 2d DCA 1986), to support this holding. In Owens, the petitioner sought relief based on alleged discrimination in the form of a company anti-nepotism policy which caused him to be discharged when he married another company employee. In addressing the issue of the scope of the "marital status" protection of the statute, the Commission stated:
We interpret the term `marital status' broadly to include one's relationship to one's spouse, rather than narrowly to include only the fact that one is married, single, divorced or widowed.
8 F.A.L.R. at 440.[1]
Discharge based on an anti-nepotism policy is clearly distinguishable from what occurred in the instant case. Here, Sharon Morand's termination did not occur because of her marital status; it occurred because of National's desire to keep Robert Morand off the premises. The Commission's interpretation of the statute is erroneous and, thus, must be reversed. See § 120.68(9), Fla. Stat. (1985).
The hearing officer in the instant case specifically found that marital status was not a motivating factor in Morand's termination, but that it was based on National's legitimate business concerns in keeping Robert Morand from the premises. Discriminatory intent is a factual issue. Howard Johnson Company v. Kilpatrick, 501 So.2d 59 (Fla. 1st DCA 1987); School Board of Leon County v. Hargis, 400 So.2d 103 (Fla. 1st DCA 1981). An agency may not reject or modify the findings of fact of the hearing officer unless the agency first determines from a review of the complete record that the findings of fact were not based upon competent, substantial evidence. Ferris v. Austin, 487 So.2d 1163 (Fla. 5th DCA), cause dismissed by, 492 So.2d 1330 (Fla. 1986). There is nothing in the record to refute the hearing officer's *898 finding that no discriminatory intent was present. In fact, there was no transcript provided; thus, the hearing officer's order was the only evidence before the Commission. The obligation of the agency to honor the hearing officer's findings of fact cannot be avoided by categorizing a finding as a "conclusion of law." Kinney v. Department of State, Division of Licensing, 501 So.2d 129 (Fla. 5th DCA 1987). Therefore, reversal is also proper on this basis.
National also contends the Commission applied an incorrect standard of proof as to the burden placed on the employer in a discrimination case. In Owens, the Commission noted the standard of proof applicable in establishing employment discrimination as set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under that test, the plaintiff has the initial burden of proving by the preponderance of the evidence a prima facie case of discrimination. If the plaintiff succeeds in proving that prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Id. at 802, 93 S.Ct. at 1824. Should the employer carry this burden, the burden then shifts back to the petitioner to show by a preponderance of the evidence that the reasons offered by the employer were not its true reasons, but were a pretext for discrimination. See also Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). However, the Commission in Owens applied a higher standard based on the fact that the employer therein conceded that the petitioner was discharged because he married a co-worker. Under that standard, once a discriminatory employment practice is shown, the burden shifts to the employer to establish an affirmative defense that its action was based on a bona fide occupational qualification.[2]
In the instant case, the Commission applied the heavier burden, stating in its order that the initial burden is on the party claiming discrimination to establish that the employer took action against him in a prohibited manner, but that once the discrimination has been shown, the burden is on the employer to establish an affirmative defense to justify the action. The Commission found that Morand had produced a prima facie case, but that National failed to meet its burden, since it failed to demonstrate that no alternate course of action which would allow Morand to continue employment was present. Once the Commission assumed a violation of law because of its determination that Morand was fired based on her "relationship," it automatically and incorrectly shifted the burden to National to present an affirmative defense for this "discrimination." However, as indicated above, this interpretation of the statute was improper, as was the imposition of the heavier burden on National.
In this case the Commission has re-written a clear statute and inverted the factual findings of its own hearing officer. One is somehow reminded of the party ministers of Oceania engaged in the practice of doublethink, composing revisionist histories of the world, and confidently asserting that two plus two equals five.[3]
REVERSED.
ORFINGER, J., and UPCHURCH, F.D., Jr., Judge, Retired, concur.
NOTES
[1] In making this determination, the Commission relied on Kraft, Inc. v. State of Minnesota, 284 N.W.2d 386 (Minn. 1979). However, in a case factually similar to the instant one, Cybyske v. Independent School District No. 196, Rose mount-Apple Valley, 347 N.W.2d 256 (Minn. 1984), cert. denied, 469 U.S. 933, 105 S.Ct. 330, 83 L.Ed.2d 266 (1984), the same court rejected an interpretation of the anti-discrimination statute which would have allowed for an action for marital status discrimination based on the failure of an employer to hire a woman because of her husband's political views. Thus, even a broad interpretation of "marital status" does not encompass the instant case.
[2] Section 760.10(8)(a), Florida Statutes (1985), provides:

(8) Notwithstanding any other provision of this section, it is not an unlawful employment practice under ss. 760.01-760.10 for an employer, employment agency, labor organization, or joint labor-management committee to:
(a) Take or fail to take any action on the basis of religion, sex, national origin, age, handicap, or marital status in those certain instances in which religion, sex, national origin, age, absence of a particular handicap, or marital status is a bona fide occupational qualification reasonably necessary for the performance of the particular employment to which such action or inaction is related.
[3] G. Orwell, 1984 (1949).