586 So.2d 1205 (1991)
FLORIDA DEPARTMENT OF COMMUNITY AFFAIRS, Appellant,
v.
Michelle BRYANT, Appellee.
No. 90-1924.
District Court of Appeal of Florida, First District.
September 16, 1991.
*1207 Alfred O. Bragg, III, Tallahassee, for appellant.
Ben R. Patterson of Patterson & Traynham, Tallahassee, for appellee.
ERVIN, Judge.
The Florida Department of Community Affairs (Department), appellant herein, seeks review of a final administrative order rendered by the Commission on Human Relations (Commission), holding that appellant committed an unlawful employment practice by failing to hire appellee, Michelle Bryant, a black woman, as a Planner II, and awarding full affirmative relief to appellee. It is appellant's position that the Commission improperly invaded the fact finder's function by substituting its judgment for that of the hearing officer when it concluded, contrary to the hearing officer, that the Department committed an unlawful employment practice. In addition, the Department urges that the final order is unenforceable, because it was entered more than ninety days after the recommended order was issued, in violation of Section 120.59, Florida Statuates (1987), and because the injunctive portion of the order is unduly vague. We agree that the Commission, contrary to the provisions of Section 120.57(1)(b)10, Florida Statutes (1987), improperly modified findings of fact made by the hearing officer that are supported by competent, substantial evidence (CSE) in the record. Because reversal is warranted under the first point, we find it unnecessary to address appellant's second point.
The record in this case shows that appellee worked for the Department as a Community Specialist I in its Division of Housing and Community Development until September 30, 1987, when that program was transferred and she was laid off. Appellee had worked for the Department since January 1983 and was a permanent employee; therefore, she had priority over other applicants for openings at the Department in the same pay grade. However, if she applied for positions in higher pay grades, she would be treated as an ordinary applicant.
At the time of the layoff, the Department of Administration (DOA) maintained a computer data base containing the names of all those who were qualified in specified employment classes. It used numerical codes to denote the different position classes, as well as subclasses within them. The system worked as follows: A person interested in a particular class of employment would apply for same at DOA, and a DOA analyst would evaluate the application and the applicant's background and make a decision as to what positions the applicant was eligible for. The Planner II class, which is at issue here, had in addition to the general class code, option codes, which indicated persons with specialized backgrounds. Under the system in place in 1987, if a person had a specialized background, he or she would be put in the option class code for that specialty rather than under the generic or general code, and the person would have to specifically ask to be placed under the generic code. State agencies that were then recruiting could order a printed "Certificate of Eligibles" (COE) containing the names of all those who had registered within the class requested.[1] Although all state agencies use this system for recruitment, the DOA has *1208 the sole responsibility for maintaining the system and running it.
When she was terminated, appellee was listed in the DOA's computer data base as a Community Specialist I. Additionally, because Bryant had qualified in 1984 as a Planner II in two special subclasses, Planner II in Intergovernmental Relations, which is associated with the Department, and Planner II for the Department of Health and Rehabilitative Services, she was also listed as a Planner II under those two option codes. She was not, however, listed as a general Planner II.
Four other employees were laid off at the same time Bryant was. One of those employees was Leonard Case, a white male. Unlike Bryant, Case had not attained permanent status at the time of the layoff. However, Case was fully qualified as a Planner II and had registered with the DOA in the general Planner II class.
Some weeks after the September 1987 layoff, a Planner II in the Department resigned from position number 570 in the Division of Emergency Management.[2] The Department elected to hire someone from the COE for the general Planner II class to fill the position. It therefore ordered and received the COE on December 3, 1987. Mr. Case's name appeared on the list, as did numerous other names, but Ms. Bryant's name did not. Case was interviewed the following day and immediately offered the job. Case had been recommended not only by the Planner II he replaced, but also by his prior supervisor with the Department. No one other than Mr. Case was interviewed. Case started in his new position three days later.[3]
Upon learning that the Department had hired Case for the position, Bryant complained to the Commission on Human Relations, claiming racial discrimination in the Department's failure to consider her for the position. She alleged that the action was in retaliation for earlier grievances she had lodged, and that she was better qualified than Case because she had been with the Department longer. In response, the Department alleged that it could not have considered Bryant because her name was not on the COE. Following an investigation, the Commission denied the grievance for lack of reasonable cause. Bryant filed a petition for formal hearing and the case went before a hearing officer from the Division of Administrative Hearings.
The hearing officer found that Ms. Bryant had proved a prima facie case of disparate treatment, but that the Department had overcome Ms. Bryant's prima facie case by showing that the absence of her name from the COE was a legitimate reason for its failure to hire her. Based upon these findings, the hearing officer recommended that Bryant's petition be dismissed.
Bryant submitted exceptions to the recommended order, particularly attacking the hearing officer's conclusion that the Department had articulated a legitimate reason for its employment decision. Bryant argued that the hearing officer erred when he concluded that rule 22A-3.007(3)(b)1 permits an employer to merely make an appointment if the COE contains three or more names. It was Bryant's position that the rule required the agency to contact all *1209 those whose names appear on the COE or register. Because the Department contacted no one other than Case, it had unreasonably interpreted the rule and ignored the state's articulated policy of encouraging open competition for job vacancies.
The exceptions were heard before a panel of the Florida Human Relations Commission, which found merit in Bryant's arguments regarding the use of the COE. The Commission therefore entered an order finding that Bryant had presented a prima facie case, which the Department had not overcome with a legitimate reason, and that the Department had committed an unlawful employment practice justifying an award to Bryant.
This case involves an alleged violation of Florida's Human Rights Act of 1977, Sections 760.01-.10, Florida Statutes (1987). Because this act is patterned after Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, federal case law dealing with Title VII is applicable. School Bd. of Leon County v. Hargis, 400 So.2d 103, 108 n. 2 (Fla. 1st DCA 1981).
The ultimate question of the existence of discrimination is a question of fact. Thus, an appellate court's power to alter the lower tribunal's finding in that regard is limited to those findings that are clearly erroneous. Equal Employment Opportunity Comm'n v. Kimbrough Inv. Co., 703 F.2d 98, 100 (5th Cir.1983). Consequently, a hearing officer's finding of no discrimination should only be set aside if that finding is clearly erroneous, or is based on clearly erroneous findings of fact or a mistaken view of the law. Carmichael v. Birmingham Saw Works, 738 F.2d 1126, 1129 (11th Cir.1984).
The Supreme Court set forth the following burden of proof that must be met by a Title VII plaintiff in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973): The complainant must carry the initial burden of establishing a prima facie case of race discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. After the complainant satisfies this burden, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection. If the employer articulates such a reason, the complainant must then be afforded a fair opportunity to show that the employer's stated reason was in fact a pretext. Id. at 802-04, 93 S.Ct. at 1824-25, 36 L.Ed.2d at 677-79. In Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), the Court reiterated that the plaintiff always retains the burden of persuasion. Once the plaintiff has established a prima facie showing of discrimination, the defendant need only articulate  it need not prove  the existence of a legitimate, nondiscriminatory reason for its actions. The plaintiff then retains the burden of persuading the court that the offered reason is a pretext and that a discriminatory reason more likely motivated the employer in its actions. Id. at 254-56, 101 S.Ct. at 1094-95, 67 L.Ed.2d at 216-17.
In regard to the issue of whether Bryant established a prima facie case of discrimination, it should be noted that the four factors in McDonnell Douglas were not meant to be an inflexible yardstick, rather they were intended to function as evidentiary guides for the determination of the ultimate issue: whether the employer discriminated against a claimant based on race. Thus, if an employer uses an informal, secretive selection process in hiring which causes the plaintiff to be unaware of a job opening, a plaintiff may raise an inference of intentional, racially disparate treatment without proving that he or she technically applied for and failed to obtain a position. See Roberts v. Gadsden Memorial *1210 Hosp., 835 F.2d 793, 796-97 (11th Cir.1988). In the case at bar, the Department did not post notice of the position opening that was awarded to Case. Thus, Bryant had no way of knowing that the position was available. Under these circumstances, it was unnecessary for Bryant to show that she was an applicant for the position in order to establish her prima facie case. Id. This is especially true in view of the evidence that the Department was well aware of her interest in obtaining employment with it.
Bryant having established a prima facie case, the Department then articulated the following reasons for its actions. The position Case was awarded was fully funded by the Federal Emergency Management Agency. A vacancy in that position could result in loss of federal funds in the next contract year. As the end of the fiscal year was approaching, the Department considered it necessary to fill the vacancy without delay to ensure continued funding. That need prompted the agency to utilize the recruitment process of choosing someone from the COE, as set forth in rule 22A-3.007(3)(b)1, because it would eliminate the more protracted length of time required if the position were posted. In accordance with the rule, the Department ordered a COE. Bryant's name did not appear on that certificate, while Case's name did. Case, a former employee who was recommended both by the person leaving the Planner II position and his prior supervisor, was ultimately selected from the certificate.
Because appellee established a prima facie case, and because the Department offered a legitimate, nondiscriminatory reason for not considering appellee, the McDonnell-Burdine presumptions dropped from the case, and the hearing officer was required to decide the ultimate factual issue before him, i.e., whether the Department's failure to consider appellee for the Planner II position was discriminatory within the meaning of the applicable statutory provisions. United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 714-15, 103 S.Ct. 1478, 1481-82, 75 L.Ed.2d 403, 410 (1983). In other words, the hearing officer was required to determine which party's explanation of the employer's motivation he believed. Id. at 716, 103 S.Ct. at 1482, 75 L.Ed.2d at 411. Here, the hearing officer concluded that appellee failed to prove that the Department acted with discriminatory intent when it hired Case from the COE.
Because discriminatory intent is an issue of fact, dealing with the weight and credibility of the evidence presented, Howard Johnson Co. v. Kilpatrick, 501 So.2d 59, 61 (Fla. 1st DCA 1987); National Industries, Inc. v. Commission on Human Relations, 527 So.2d 894, 897 (Fla. 5th DCA 1988), it must be accepted by the reviewing agency unless that finding is not supported by CSE in the record. See Section 120.57(1)(b)10, Florida Statutes (1987).[4]E.g., Howard Johnson Co. v. Kilpatrick, 501 So.2d 59 (Fla. 1st DCA 1987) (where hearing officer found that employer presented evidence of legitimate reason for firing employee and lack of discriminatory intent sufficient to rebut case of age discrimination, Commission could not reject those findings because a factual basis existed for them); Holmes v. Turlington, 480 So.2d 150 (Fla. 1st DCA 1985) (where hearing officer found no impropriety in teacher's conduct and concluded that such conduct did not violate disciplinary rules, reviewing agency implicitly substituted its own finding of improper conduct in violation of section 120.57(1)(b)10); School Bd. of Leon County v. Hargis, 400 So.2d 103 *1211 (Fla. 1st DCA 1981) (where hearing officer concluded that there was no evidence from which one could infer that Hargis was the subject of unlawful discrimination, the Commission could not reject that finding, even by labeling it as a conclusion of law, because said finding was supported by CSE in the record); National Indus., Inc. v. Commission on Human Relations, 527 So.2d 894 (Fla. 5th DCA 1988) (where hearing officer found that employee was not terminated because of marital status, but rather that company had legitimate interest in terminating her employment, Commission could not reject those findings and find an improper termination, because CSE supported the findings); Brevard County Sheriff's Dep't v. Florida Comm'n on Human Relations, 429 So.2d 1235 (Fla. 5th DCA 1983) (where hearing officer concluded discharge was not related to handicap, but was due to bona fide occupational qualification reasonably necessary for performance of job, Commission could not reject that finding and substitute its own finding, because CSE supported it). Like the above cases, there is CSE in the record to support the hearing officer's determination that the Department acted without discriminatory intent. Consequently, the Commission erred by rejecting such finding and substituting its own finding in place thereof.
In so concluding, we note that there is authority for holding that an employer's use of a secretive, informal method of hiring cannot itself provide a legitimate business reason for failing to consider a candidate, see Roberts, 835 F.2d at 797-98 (employer never announced job opening and selected a drinking buddy to fill the position); nevertheless, we cannot conclude that the procedure employed here was secretive or informal. The COE procedure is clearly set forth in rule 22A-3.007(3)(b)1. All those who wished to be considered for a particular position could have their names placed on the COE, regardless of race, and only those names on the COE could be considered for the position. The rule clearly prohibits the agency from considering others unless the position was advertised. Its obvious purpose is to allow filling of vacant positions; it in no way requires each person named on the COE to be contacted. Although the COE system may not be the best method for hiring, neither section 760.10 nor Title VII imposes a duty to adopt a hiring procedure that maximizes hiring of minorities. See Furnco Constr. Corp. v. Waters, 438 U.S. 567, 578, 98 S.Ct. 2943, 2950, 57 L.Ed.2d 957, 968 (1978) (employer refused to take applications for positions, because it wanted to hire persons known to be experienced and competent in the work that was required to be done); Equal Employment Opportunity Comm'n v. Kimbrough Inv. Co., 703 F.2d 98 (5th Cir.1983) (company's use of "folder system" in filing applications, although not the best system, was uniformly followed and applied to all persons regardless of race, and was therefore legitimate business reason). Moreover, the fact that the result seems unfair to the claimant is not enough, if the employer's decision is based on a legitimate business reason, because unfairness alone is not a violation of section 760.10. See, e.g., National Indus., Inc., 527 So.2d at 895 (employer's concern over plaintiff's husband's presence on the employer's property was resolved by terminating the plaintiff's employment; that such efficiency proved fairly drastic to the plaintiff does not, absent more, constitute an unlawful employment practice).
To conclude, because CSE supports the hearing officer's factual findings that the Department's actions were prompted by a legitimate, nondiscriminatory reason, the Commission erred by substituting its own judgment for that of the hearing officer in violation of section 120.57(1)(b)10. Therefore, the order on appeal must be reversed, and because reversal is warranted under the first issue, it is unnecessary to address the issues raised by appellant regarding the enforceability of the final order.
REVERSED and REMANDED with directions to adopt the hearing officer's recommended order as the final order.
WIGGINTON, J., and CAWTHON, Senior Judge, concur.
NOTES
[1] This procedure was set forth in the 1985 version of Florida Administrative Code Rule 22A-3.007(3)(b)1, as follows:

In a class that has not been designated as entry level, an employing agency may either announce a vacancy and add the names of additional qualified applicants to the current Certificate of Eligibles for the class, or not announce a vacancy and select an applicant from the current Certificate of Eligibles for the class, provided that three or more names are contained on the Certificate. If less than three names are contained on the Certificate, the agency must announce the vacancy. If the position vacancy announcement fails to provide additional applicants, the agency may restrict the number of applicants considered to the number of the Certificate.
(Rule 22A-3.007 was substantially rewritten in November 1988 and this provision was deleted.)
[2] The Planner II position is a nonentry level position and is in a higher pay grade than the Community Specialist I.
[3] The Department has a policy of giving preference to former employees, like Case and Bryant, who had been laid off.
[4] That statute provides, in part:

The agency in its final order may reject or modify the conclusions of law and interpretation of administrative rules in the recommended order, but may not reject or modify the findings of fact unless the agency first determines from a review of the complete record, and states with particularity in the order, that the findings of fact were not based upon competent substantial evidence or that the proceedings on which the findings were based did not comply with essential requirements of law... .