**Christine SANDERS, Plaintiff,**

v.

**MAYOR'S JEWELERS, INC., Sam Getz, Irving Getz and Steven Shonebarger, Defendants.**

**No. 95–2085–CV–LENARD.**

United States District Court, S.D. Florida.

Aug. 2, 1996.

Karen Coolman Amlong and Robyn S. Hankins, Amlong & Amlong, P.A., Fort Lauderdale, Florida, for Plaintiff.

Aaron Samuel Podhurst and Karen Beth Podhurst, Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, Stephen N. Zack, Bertha C. Lee, Zack, Sparber, Kosnitzky, Spratt & Brooks, P.A., Miami, Florida, Keith E. Hope, Keith Hope, P.A., Key Biscayne, Florida, for Defendants.

## *OMNIBUS ORDER*

LENARD, District Judge.

In this civil action, Plaintiff Christine Sanders, a jewelry buyer for Mayor's Jewelers, Inc., alleges that she was sexually harassed by CEO and President Sam Getz, Vice President Steven Shonebarger and former-CEO Irving Getz. She seeks monetary and injunctive relief against both the company and the individual defendants. The Second Amended Complaint contains the following claims: sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, against Mayor's (Counts I & II); sexual harassment, retaliation and marital discrimination in violation of the Florida Civil Rights Act of 1992, Chapter 760, Florida Statutes, against all defendants (Counts III–V); and negligent training, supervision and retention, battery and invasion of privacy in violation of state law, against all defendants (Counts VI, VII & IX).

Presently before the Court are two motions to dismiss various counts and a motion

to dismiss the punitive damage claims asserted against the individual defendants on the state law causes of action.

## Factual Background

This case arises from the sexual harassment allegedly experienced by Sanders while working as a store manager and later as a diamond buyer for Defendant Mayor's Jewelers. Sanders claims that two current officers and one former officer of the company, Sam Getz, Steven Shonebarger and Irving Getz, respectively, sexually harassed her by making sexually inappropriate comments and by coming into unwelcome physical contact with her. Second Amended Complaint ¶¶ 12–14. Plaintiff has alleged over thirty-five verbal or physical acts of discrimination in her complaint. *Id.*

After she complained about this conduct, Sanders alleges that her workload was increased but that the company relieved her of all of her decision-making or management participatory duties in retaliation for her opposition to the behavior of defendants. *Id.* ¶¶ 15–16.

Sanders timely filed charges of discrimination with the Equal Employment Opportunity Commission (EEOC) and the Florida Commission on Human Relations (FCHR). The EEOC issued Sanders a Notice of Right to Sue on or about August 1, 1995, while the FCHR deferred consideration of the charges to the EEOC. Plaintiff filed this action on September 22, 1995.

## Rule 12(b)(6) Standard

In deciding a motion to dismiss, the district court is required to view the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). A complaint should not be dismissed for failure to state a cause of action "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

entitle him to relief." *Bank v. Pitt,* 928 F.2d 1108, 1111–12 (11th Cir.1991) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). The Federal Rules of Procedure "do not require a claimant to set out in detail the facts upon which he bases his claim." *Conley,* 355 U.S. at 47, 78 S.Ct. at 103. All that is required is "a short and plain statement of the claim." Fed.R.Civ.P. 8(a)(2). The standard on a 12(b)(6) motion is not whether the plaintiff will ultimately prevail in his theories, but whether the allegations are sufficient to allow them to conduct discovery in an attempt to prove allegations. *Jackam v. Hospital Corp. of Am. Mideast, Ltd.,* 800 F.2d 1577, 1579 (11th Cir.1986).

## Florida Civil Rights Act Claims

### 1. As to the individual defendants

█ The individual defendants move to dismiss the FCRA claims asserted against them arguing that like Title VII of the Civil Rights Act of 1964, the Florida Civil Rights Act does not allow individual liability suits. In support of this theory, defendants argue that because the Florida Legislature closely modeled the FCRA after Title VII, Florida courts apply case law interpreting Title VII to decide issues arising under the FCRA. *See Byrd v. Richardson–Greenshields Secs., Inc.,* 552 So.2d 1099, 1102 (Fla.1989); *Florida Dep't of Community Affairs v. Bryant,* 586 So.2d 1205, 1209 (Fla. 1st DCA 1991). Therefore, defendants assert, the Eleventh Circuit's decision in *Busby v. City of Orlando,* 931 F.2d 764 (11th Cir.1991), which found that Title VII does not provide for suits against individuals, would apply here by analogy to exempt defendants from suit under the FCRA. Sanders submits that federal case law interpreting Title VII is highly persuasive in interpreting the FCRA but suggests that the "liberal construction" mandate [1] and other unique features of the FCRA [2] not found in Title VII make an

---

1. Fla.Stat. § 760.01(3) states: "The Florida Civil Rights Act of 1992 shall be construed according to the fair import of its terms and shall be liberally construed to further the general purposes states in this section and the special purposes of the particular provision involved."

2. Indeed, the defendants acknowledge that unlike Title VII, the FRCA permits individual liability in two discrete situations. *See* Fla.Stat. § 760.10(5) (prohibiting discrimination by persons, including individuals, against those seeking occupational or business licensure); Fla.Stat. § 509.092 (prohibiting discrimination in public lodging and public food service establishments

independent foray into the meaning of the state statute necessary.

The FCRA makes it "an unlawful employment practice for an **employer** ... to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status." Fla.Stat. § 760.10(1)(a) (emphasis added). " 'Employer' means any person employing 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such a person." Fla.Stat. § 760.02(7). Title VII's definition of "employer" is identical. 42 U.S.C. § 2000e(b). Other courts in this District have held that individual capacity suits are not permitted under the FRCA. *See, e.g., Paris v. City of Coral Gables,* No. 94–0930 (S.D.Fla. Jan. 27, 1995); *Albert v. National Cash Register Co.,* 874 F.Supp. 1328, 1330 (S.D.Fla.1994). In addition, at least two other federal district courts in Florida have decided this issue in the same fashion. *See Jolley v. Wallace,* No. 95–147–CIV–ORL–22, 1995 WL 463709, at *1 (M.D.Fla. May 30, 1995); *Urquiola v. Linen Supermarket, Inc.,* No. 94–14–CIV–ORL–19, 1995 WL 266582, at *2 (M.D.Fla. Mar. 23, 1995). Sanders suggests no reason why this Court should construe identical statutory provisions to produce meanings differing widely enough to submit a whole new class of defendant to suit in discrimination actions brought under the FCRA. The Court declines to take the first step in a direction so completely unsupported by the law of this State and this Circuit.

2. As to Defendant Mayor's

 Defendant Mayor's seeks to dismiss the FCRA marital discrimination claim against it for failure to state a claim upon which relief can be granted. It alleges that Sanders failed to allege facts to support each of the elements of marital discrimination as set out in the one and only case reported on this claim, *National Indus., Inc. v. Commission on Human Relations,* 527 So.2d 894 (Fla. 5th DCA 1988). The elements are (1) marital status, (2) performance of position in a satisfactory manner and (3) despite such performance, a condition or privilege of plaintiff's employment was affected by her marital status. *Id.* at 896.

Sanders alleged that "she was divorced at the time of the unlawful conduct, but was engaged to be married." Second Amended Complaint ¶ 4(c). She alleged employment and performance of her job in a satisfactory manner. Second Amended Complaint ¶ 4. Finally, Sanders alleged marital status as motivating factor, or the existence of discriminatory intent based upon such status. Second Amended Complaint ¶¶ 12(r), 13(g) and 36. Sanders has alleged facts supporting a prima facie case and thus has stated a proper claim for marital discrimination against Mayor's in the Second Amended Complaint.

## Punitive Damage Claims and the State Law Causes of Action

The individual defendants have also moved to dismiss Sanders's claims for punitive damages on the state law causes of action. Specifically, Defendants assert that Fla.Stat. § 768.72 applies in this action to prevent Sanders's punitive damage claims as unsupported by the reasonable showing of evidence required by the statute. Sanders responds that § 768.72 does not apply in federal actions, or alternatively, if the statute is applicable, the record contains sufficient evidence for the Court to find a reasonable basis for the punitive damage claims as the statute requires.[3]

by their "operators"). The Legislature's intent to make special provision for individual liability in these two specific situations is underscored by Fla.Stat. § 760.11: "Any person aggrieved by a violation of ss. 760.01–760.10 may file a complaint with the commission within 365 days of the alleged violation, naming the employer, employment agency, labor organization, or joint labor-management committee, *or, in the case of an alleged violation of s. 760.10(5), the person responsible for the violation* and describing the viola-

tion. *Any person aggrieved by a violation of s. 509.092 may file a complaint with the commission within 365 days of the alleged violation naming the person responsible for the violation* and describing the violation (emphasis added)." Neither of these two particular situations are alleged in the Second Amended Complaint.

3. Sanders also asserts that Defendant is procedurally barred from raising the legitimacy of the punitive damage claims by S.D.Fla.L.R. 7.1(4).

## 1. Applicability of Fla.Stat. § 768.72 in Federal Litigation

■ Fla.Stat. § 768.72 provides:

In any civil action, no claim for punitive damages shall be permitted unless there is a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages. The claimant may move to amend its complaint to assert a claim for punitive damages as allowed by the rules of civil procedure. The rules of civil procedure shall be liberally construed so as to allow the claimant discovery of evidence which appears reasonably calculated to lead to admissible evidence on the issue of punitive damages. No discovery of financial worth shall proceed until after the pleading concerning punitive damages is admitted.

The Eleventh Circuit has never discussed the applicability of this statute in federal actions. The defendants rely primarily on *Al–Site Corp. v. VSI Int'l, Inc.*, 842 F.Supp. 507 (S.D.Fla.1993), the most recent opinion in the Southern District considering the statute. In *Al–Site*, the court disagreed with other courts of this District having considered the issue by finding that both the pleading and discovery aspects of Section 768.72 should be applied substantively in federal court, whereas prior decisions either had rejected the applicability of the pleading aspect of the statute or had rejected it in toto as procedural and thus superseded by relevant Federal Rules of Civil Procedure, i.e. Fed.R.Civ.P. 8(a)(2), 9(g) and 26. This Court accepts the conclusion of *Al–Site* finding Section 768.72 fully applicable in federal litigation. However, given the parties' concern about the effect of the different bases for jurisdiction in that case (diversity) and here (pendent), the Court presents the following analysis.

■ *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), provides the basis for jurisdiction over Sanders' pendent state law claims against the individual defendants. To determine whether or not to apply Fla.Stat. § 768.72 to those claims, this Court takes heed of Justice Brennan's unequivocal assertion in *Gibbs* that a federal court hearing such claims "is bound to apply state law to them." 383 U.S. at 726, 86 S.Ct. at 1139 (citing *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). *Gibbs* extends the rule announced in *Erie*, from requiring federal courts to apply state law only in cases based on diversity jurisdiction, to those based on pendent jurisdiction as well. Specifically, *Erie* requires that federal courts apply only that state law which can be construed as substantive. Several Supreme Court decisions decided after *Erie*, narrowed the meaning of "substantive" by use of various tests. In *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), the Court adopted an "outcome-determinative test," requiring federal courts to apply state law as necessary to resolve questions so that "the outcome of the litigation in federal court [would] be substantially the same, so far as legal rules determine the outcome of litigation, as it would be if tried in a State court." 326 U.S. at 108, 65 S.Ct. at 1469. In 1956, the Court abandoned the outcome based test of *Guaranty Trust* and mandated application of state law if required by the federal interest in uniform procedure and the state interest in uniformity of result. *Byrd v. Blue Ridge Rural Electric Co-op.*, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1956). Finally, in *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), the Court required federal courts faced with seemingly equally applicable state and federal law to determine where a direct conflict exists between the two. If such a conflict exists, the relevant federal law is to be applied. If the laws do not conflict, the court must then proceed to a second step, consideration of whether the "twin aims of *Erie*,"

---

The local rule requires a party resubmitting an issue to the Court which has been ruled on by a different court to make the new court aware of such ruling and allege sufficient new facts or circumstances warranting reconsideration of the issue in an affidavit. This case was transferred to this Court on March ___, 1996. Prior to transfer, Judge Highsmith entered an order dismissing Sanders's Title VII claims against the individual defendants and denying the individual defendants' motion to dismiss the punitive damage claims at issue here. This court, however, chooses to treat the motion regarding punitive damage claims on the merits.

discouragement of forum-shopping and avoidance of inequitable administration of the laws, would be satisfied by application of the state law.

*Hanna* requires that this Court first determine if conflict exists between Fla.Stat. § 768.72 and similar federal law. This Court agrees with the *Al–Site* court as to the potential sources of conflict and upon analysis, the lack thereof. Fed.R.Civ.P. 8(a)(2) obliges the pleader to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." The state statute carries no requirement as to the content of the pleader's claim for damages. Nor does the statute require the specificity of Fed.R.Civ.P. 9(g).[4] Fla.Stat. § 768.72 simply requires that the court supervise the pleading of punitive damages, such that no access to discovery of a defendant's net worth, for example, will be available until the court has permitted the punitive damage claims based on a successful factual showing of a reasonable basis therefor.

The statutory burden of production of § 768.72 not found in the federal rules suggests to the Court, as it did to the *Al–Site* court, that the Florida Legislature has deliberately fashioned a procedure requiring court approval in every instance before net worth discovery may proceed.[5] Thus it can be inferred that the aim of such a procedure is to protect litigants from forced disclosure of their financial situation on the whim of their opposition. Applying the second part of the *Hanna* analysis, the Court determines that failure to employ Section 768.72 would inevitably lead to inequitable administration of the laws where as here, the only bases for federal court jurisdiction are the Title VII claims asserted against the employer defendant.[6] Given the dual jurisdiction of the federal and state courts over Sanders' claims

against the individual defendants, the Court must apply the state law not only to guarantee the defendants the substantive right provided them by the State but to discourage the effects of the obvious opportunity for forum shopping present here. Finally, given that both the plaintiff and defendants are residents of Florida, there can be no prejudice to apply equally to them the law of their state of residence, when such law would be applied to the claims at issue as a matter of course if this case was being heard in state court.

**2. Plaintiff's Compliance with Fla.Stat. § 768.72**

■ Under the foregoing analysis, Fla. Stat. § 768.28 applies to this case. As a result, decisions of Florida courts interpreting Section 768.28 are applicable as well. In *Simeon, Inc. v. Cox,* 671 So.2d 158, 160 (Fla. 1996), the Florida Supreme Court found that compliance with the statute requires plaintiffs to seek leave of court before amending their complaints to include claims for punitive damages. Sanders has not requested such leave. In addition, the Court submits that even if it were to consider at this time whether Sanders' claims for punitive damages are supported by the requisite factual proffer, it would be unable to do so because Sanders' proffer has not been properly verified. Therefore, the claims for punitive damages will be dismissed without prejudice. Should Sanders wish to pursue such claims, she shall file a motion for leave to do so, at which time the Court will consider whether a sufficient factual proffer has been made to allow her to proceed with the punitive damage claims.

Based on the foregoing, it is hereby

**ORDERED AND ADJUDGED** that

---

**4.** Fed.R.Civ.P. 9(g) states: "When items of special damage are claimed, they shall be specifically stated."

**5.** The Court adopts the reasoning of the *Al–Site* and *Plantation Square* courts with respect to the applicability of the discovery aspect of Section 768.72 in federal litigation. *See Al–Site,* 842 F.Supp. at 510–11; *Wisconsin Inv. Bd. v. Plantation Square Assoc.,* 761 F.Supp. 1569, 1580 (S.D.Fla.1991).

**6.** As a result of the earlier sections of this Order, the only claims that remain against the individual defendants are the state law claims of assault, invasion of privacy and negligent hiring, retention and training. As such, this case has continuing jurisdiction in this Court contingent on the continued existence of Sanders' Title VII claims against the employer defendant.

1. The individual defendants' motion to dismiss Counts III, IV and V of the Second Amended Complaint (DE# 98) is **GRANTED.**

2. Defendant Mayor's Jewelers motion to dismiss Count V of the Second Amended Complaint (DE# 101) is **DENIED.**

3. The individual defendants' motion to dismiss punitive damage claims in Counts VI, VII and VIII (misnumbered IX) of the Second Amended Complaint (DE# 99) is **GRANTED.**

4. The individual defendants' request for oral argument on their motion to dismiss punitive damage claims (DE# 100) is **DENIED.**