United States Court of Appeals,

Eleventh Circuit.

No. 97-2428.

Rosario DONATO, Plaintiff-Appellant,

v.

AMERICAN TELEPHONE AND TELEGRAPH COMPANY, Defendant-Appellee.

July 23, 1998.

Appeal from the United States District Court for the Middle District of Florida. (No. 96-865-CIV-ORL-19), Patricia C. Fawsett, Judge.

Before ANDERSON and BLACK, Circuit Judges, and HOEVELER[*], Senior District Judge.

HOEVELER, Senior District Judge:

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF FLORIDA, PURSUANT TO ARTICLE V, SECTION 3(b)(6) OF THE FLORIDA CONSTITUTION. TO THE SUPREME COURT OF FLORIDA AND THE HONORABLE JUSTICES THEREOF:

This case raises the issue of whether a discharged employee can assert a claim under the Florida Civil Rights Act, Florida Statutes § 760.10, for marital status discrimination in employment practices where the employee allegedly was discharged in retaliation for the actions of his spouse. We have studied the question and conclude that this case presents an important issue of Florida law that has not been addressed by the Supreme Court of Florida. Accordingly, we believe the issue is appropriate for resolution by Florida's highest court, and defer our decision in this case pending certification of the question to the Supreme Court of Florida. To frame this issue for the Court's review we offer the following.

---

[*]Honorable William M. Hoeveler, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

This case is brought by Rosario Donato, alleging that he was the victim of marital status discrimination when AT&T terminated his employment shortly after Mr. Donato's wife, a former AT&T employee, sued AT&T. Mr. Donato filed his complaint in 1996 under the Florida Civil Rights Act, which, *inter alia,* protects employees from discrimination based on marital status.

In March 1992, Mrs. Lynda Donato filed a claim against AT&T. On October 21, 1993, the Florida Commission on Human Relations concluded that there was reasonable cause to support Mrs. Donato's initial allegations of sex discrimination and retaliation by AT&T. She was discharged from her position with AT&T in February 1994, and filed a federal action in August 1994, alleging sex discrimination and retaliatory discharge. In October 1994, Mrs. Donato applied for a temporary clerical position in the division of AT&T which employed her husband. During a meeting with manager Al Facini, she disclosed her lawsuit against AT&T and was told that she was "over-qualified" for the open position.

In November 1994, Mr. Donato was informed that his position as a Systems Analyst was placed "at risk", allegedly due to Mr. Donato's poor performance. He also was told by his supervisor, Frank Minardi, that his position was being eliminated (although Mr. Donato alleges that another employee subsequently was assigned to perform all of his duties). On November 15, 1994, just two days before his thirtieth-year anniversary with AT&T, Mr. Donato was discharged.

Mr. Donato filed a charge of discrimination on July 17, 1995, which the EEOC did not timely resolve. He then filed a single-count complaint in state court on July 3, 1996, seeking reinstatement, compensation, and punitive damages up to $100,000. AT&T removed the case to federal court on the basis of diversity and then moved to dismiss the case, arguing that the Act only protects marriage status in general and does not prohibit discrimination against a person because he

2

or she is married to a particular person, e.g. a foreign citizen, a disabled person, or a troublemaker. The District Court granted AT&T's motion in a brief order issued February 21, 1997, and upon Mr. Donato's failure to amend his complaint, the case was dismissed with prejudice on March 11, 1997. This appeal followed.

The issue here is whether Mr. Donato has stated a cause of action under the Florida Civil Rights Act, Florida Statutes § 760.10(1)(a). The Act provides:

(1) It is an unlawful employment practice for an employer:

(a) To discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's ... marital status.

Fla. Stat. § 760.10(1)(a). Marital status, however, is not defined in the Act or in any other Florida anti-discrimination statute, and both parties advance conflicting interpretations.

Mr. Donato argues that the term "marital status" in the Act is ambiguous and must be construed broadly so as to effectuate the purpose of the Act (i.e. to prohibit discrimination). *See* Fla. Stat. § 760.01(3) (Act must be "liberally construed to further the general purposes stated in this section and the special purposes of the particular provision involved."). According to Mr. Donato, "marital status" encompasses not just the status of being married, as opposed to being single, but also the status of being married to a particular person. Under his suggested construction, adverse employment actions which are taken due to the identity of one's spouse are as illegal as those taken against a person solely because they are or are not a married person.

In contrast, AT&T argues that the statutory language is clear: marital "status" is the object of the protection, not marriage to a particular person. AT&T asserts that a claim does not exist

where an individual alleges unlawful discharge because of his or her spouse's identity, as compared to the simple "status" of being married.

Few reported decisions exist in Florida to guide this court's interpretation of the statute. In 1986, Florida's Second District Court of Appeal affirmed a Florida Commission on Human Relations ruling that an individual had a cause of action for marital status discrimination where he was fired because he married a co-worker. *Owens v. Upper Pinellas Ass'n for Retarded Citizens,* 8 Fla.Admin.L. Rep. 438 (Sept. 10, 1985), *aff'd sub nom., Upper Pinellas Ass'n for Retarded Citizens v. Florida Commission on Human Relations,* 495 So.2d 754 (Fla.App. 2nd Dist.1986). Two years later, the Fifth District Court of Appeal reversed a Commission ruling (which had rejected the decision of an administrative hearing officer) and found that an employer's discharge of an employee in order to keep that employee's husband, who was a former employee, away from the work premises was not discrimination on the basis of marital status. *National Industries v. Commission on Human Relations,* 527 So.2d 894 (Fla.App. 5th Dist.1988). The decision in *National Industries* is a narrow one, merely upholding a hearing officer's uncontroverted finding of fact that the discharge was based on a legitimate business reason (keeping the discharged employee's husband away from the workplace). While the employee's marriage to the disruptive person provided the link to justify the cathartic action, presumably the result would have been the same had the relationship been that of parent and child or brother and sister.

In 1992, the Florida Legislature effectively overruled the *Owens* decision when it amended the Act to allow employers to discharge employees when acting pursuant to an anti-nepotism policy. Mr. Donato argues that the Florida Legislature's response to the *Owens* decision demonstrates that the status of being married to a particular person is actionable under the Act. Mr. Donato contends

4

that the Florida Legislature's decision to carve out an anti-nepotism exception demonstrates that individuals had a cause of action for discrimination based on marriage to a particular person, otherwise there would not have been a need to amend the Act.

As there is little precedential authority within the state, the court has reviewed decisions from states with similar anti-discrimination statutes. Several state courts have expressly limited "marital status" discrimination to those situations in which one's claimed discrimination is a result of being single, married, divorced or widowed. *See, e.g., Miller v. C.A. Muer Corp.,* 420 Mich. 355, 363, 362 N.W.2d 650 (1984) (relevant inquiry is "if one is married rather than to whom one is married"); *Cybyske v. Independent School District No. 196, Rosemount-Apple Valley,* 347 N.W.2d 256, 261 (Minn.1984) (no discrimination on marital status where person not hired due to husband's political views, action was not "directed at the institution of marriage itself"); *Thomson v. Sanborn's Motor Express, Inc.,* 154 N.J.Super. 555, 561, 382 A.2d 53 (N.J.Super.Ct.App.Div.1977) (upholding policy excluding relatives from working in same department as not directed toward "married people"); *Manhattan Pizza Hut, Inc. v. New York State Human Rights Appeal Board,* 51 N.Y.2d 506, 511, 434 N.Y.S.2d 961, 415 N.E.2d 950 (N.Y.1980) ("marital status" means the social condition enjoyed by an individual by reason of his or her having participated in marriage; rejected New York Human Rights Division's position that marital status should be construed broadly to "embrace the identity or situation of the individual's spouse"). The Illinois Human Rights Act, which contains a similar anti-discrimination provision to that contained in the Florida Civil Rights Act, defines marital status as " "the legal status of being married, single, separated, divorced or widowed.' " *Talley v. Washington Inventory Service,* 37 F.3d 310, 311 (7th Cir.1994) (quoting the Illinois Human Rights Act, 775 ILCS 5/1-103(J)).

Courts in other states appear to interpret general prohibitions on marital status discrimination more broadly. *See, e.g., Magula v. Benton Franklin Title Co.,* 131 Wash.2d 171, 182, 930 P.2d 307 (Wash.1997) (noting that prior to 1993 legislative amendment which defined "marital status" as the legal status of being married, Washington courts employed broad interpretation and found actions based on spousal conduct constituted discrimination on basis of marital status); *Ross v. Stouffer Hotel Company (Hawaii) Ltd.,* 72 Haw.350, 355, 816 P.2d 302 (Haw.1991) (policy requiring discharge of one employee if they marry another person working in same department is discrimination on basis of marital status); *Thompson v. Board of Trustees, School District No. 12, Harlem, Blaine County,* 192 Mont. 266, 271, 627 P.2d 1229 (Mont.1981) ("marital status" includes the identity and occupation of one's spouse such that rule against spouses working within same school system was violative of state anti-discrimination statute).

It can be argued that "marital status" should be broadly defined in light of other policies which encourage and support the institution of marriage, e.g., spousal communication privileges, higher standard deduction for federal income tax purposes, expressions of public concern at high divorce rates, etc. *See* Katrina R. Kelly, *Marital Status Discrimination in Washington: Relevance of the Identity and Actions of an Employee's Spouse,* 73 Wash. L.Rev. 135, 153 (1998) (noting that Washington statutes reflect a policy favoring marriage, one which supports a broad interpretation of marital status anti-discrimination provisions).

In the end, we are unable to divine in which direction the Florida Supreme Court will determine to proceed. We are certain, however, that this is a question best answered by that Court. Thus, the court hereby certifies the following question to the Supreme Court of Florida:

Can an individual proceed under the Florida Civil Rights Act by alleging that he was discharged, in violation of the prohibition on marital status discrimination, because he is married to an individual who filed suit against his employer?

Our statement of the question is not meant to limit the scope of inquiry by the Supreme Court of Florida. *Hamilton By and Through Hamilton v. Cannon,* 80 F.3d 1525, 1535 (11th Cir.1996) (phrasing used in the certified question does not restrict consideration of the problems involved).

The entire record in this case, together with copies of the parties' briefs, is transmitted herewith.