Patricia A. THOMAS,
Plaintiff–Appellant,

v.

**WASHINGTON COUNTY SCHOOL BOARD, Defendant–Appellee.**

No. 89–1419.

United States Court of Appeals, Fourth Circuit.

Argued March 6, 1990.

Decided Oct. 5, 1990.

Bernard S. Via, III, Bristol, Va., for plaintiff-appellant.

James Parker Jones, Penn, Stuart, Eskridge & Jones, Bristol, Va., for defendant-appellee.

Before MURNAGHAN, Circuit Judge, BUTZNER, Senior Circuit Judge, and KAUFMAN, Senior United States District Judge for the District of Maryland, sitting by designation.

BUTZNER, Senior Circuit Judge:

Patricia A. Thomas appeals a judgment of the district court that dismissed her action against the Washington County School Board, alleging racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* In her complaint Thomas sought remedies for two alleged violations of the Act: first, a teaching position and monetary relief for the Board's denial of employment and, second, injunctive relief to restrain the Board from continuing its hiring practices. We affirm the district court's dismissal of the hiring claim, vacate the judgment with respect to the omission of injunctive relief, and remand for further proceedings.

I

Thomas is a black woman who was raised and educated in Washington County, Virginia. She graduated *cum laude* from Emory & Henry College and shortly thereafter was certified by the Commonwealth of Virginia to teach social studies in secondary schools. In 1982, while in her final year of college, she applied for a teaching position in Washington County. Although she kept her application current, the Board failed to notify her of job openings on three

separate occasions over a two year period. Those jobs were filled by white teachers.

One position was filled by someone more qualified than Thomas and another position was filled by someone transferring from another school within the county. It does not appear that there was any discrimination against Thomas in those instances. A third position, however, was filled by Mary Sue Smith, one of two white applicants interviewed for the position. Smith also graduated from Emory & Henry College with excellent grades, although not *cum laude*. She was the wife of a Washington County school teacher. She heard of the opening through word-of-mouth and was hired after having only one interview—the norm was three. Thomas heard of the vacancies after the Board filled them. She filed a complaint with the Equal Employment Opportunity Commission (EEOC) alleging racial discrimination. The EEOC issued a right to sue letter and this action followed.

The Board's evidence disclosed that Thomas's application was overlooked because the cover sheet indicated she had not yet been certified to teach. There was information within Thomas's file to indicate that she was certified, but apparently the file was not opened.

■ The district court found that the Board's failure to consider Thomas for the vacancies was a mistake rather than an act of intentional discrimination. This was a factual finding and is subject to review under a clearly erroneous standard. The court's finding of mistake was based largely on credibility determinations and is supported by the evidence. Consequently, it is binding upon us. *Anderson v. Bessemer City*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985).

II

The district court did not grant Thomas's request for an injunction to require the Board to change its discriminatory hiring procedure. Instead the court admonished the Board:

As a practical matter, however, the defendant should seriously consider plaintiff's application the next time a position in her field becomes vacant. The defendant was successful in this case primarily because it showed that it was ignorant of plaintiff's credentials and qualifications. Defendant now knows that plaintiff is a qualified teacher and cannot plead ignorance again. The defendant should remember that it is still subject to Title VII and act accordingly.

Although Thomas is presently teaching in nearby Tennessee, she is, as the district court recognized, a prospective applicant for a teaching position in Washington County. Consequently, she is entitled to hiring practices that conform to the requirements of Title VII.

The legal premise for Thomas's claim is sound. Congress enacted Title VII "to achieve equality of employment opportunities" through the removal of "artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of racial or other impermissible classification." *Griggs v. Duke Power Co.*, 401 U.S. 424, 429, 431, 91 S.Ct. 849, 852, 853, 28 L.Ed.2d 158 (1971). *Griggs* held that a plaintiff need not prove intentional discrimination, for Title VII also proscribes "practices that are fair in form, but discriminatory in operation." 401 U.S. at 431, 91 S.Ct. at 853. "The necessary premise of the disparate impact approach is that some employment practices, adopted without a deliberately discriminatory motive, may in operation be functionally equivalent to intentional discrimination." *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 987, 108 S.Ct. 2777, 2785, 101 L.Ed.2d 827 (1988).

The factual basis of Thomas's claim is disclosed by evidence that establishes that the Board has erected barriers that invidiously discriminate on the basis of race. The Washington County school system was desegregated in 1963. At that time there were six black elementary teachers. There remained six black elementary teachers and no black high school teachers until 1981 when Dennis Hill, following an EEOC complaint, was hired as a physical edu-

cation teacher and coach for one of the high schools. He remained the only black high school teacher in the county schools. Apart from Hill, no black teacher was hired from 1975 until 1988, after this action was filed. In 1988, the superintendent, having learned that an elderly black teacher was retiring, requested Hill to recruit another black teacher. Wittingly or unwittingly, the Board has limited black teachers over the years to a rather rigid quota.

Between 1981 and 1988, at least 46 relatives of school employees were hired, including Smith. Notices of teaching vacancies are generally not advertised; they are posted in each school in the Washington County school system. Several black applicants testified that they learned of vacancies only after they had been filled. These policies and practices amount to nepotism and word-of-mouth hiring, which, in the context of a predominantly white work force, serve to freeze the effects of past discrimination.

Courts generally agree that, whatever the benefits of nepotism and word-of-mouth hiring, those benefits are outweighed by the goal of providing everyone with equal opportunities for employment. *See, e.g., Robinson v. Lorillard Corp.,* 444 F.2d 791, 798 n. 5 (4th Cir.1971) (restriction of union membership to relatives of current members); *Barnett v. W.T. Grant Co.,* 518 F.2d 543, 549 (4th Cir.1975) ("Word-of-mouth hiring ... is discriminatory because of its tendency to perpetuate the all-white composition of a work force."); *Bonilla v. Oakland Scavenger Co.,* 697 F.2d 1297, 1303 (9th Cir.1982) ("Title VII case law has from the beginning made clear that nepotistic concerns cannot supersede the nation's paramount goal of equal economic opportunity for all."). Nepotism and word-of-mouth hiring constitute badges of discrimination in the context of a predominantly white work force. *Brown v. Gaston County Dyeing Machine Co.,* 457 F.2d 1377, 1383 (4th Cir.1972).

Nepotism is not per se violative of Title VII. Given an already integrated work force, nepotism might have no impact on the racial composition of that work force. In such cases, nepotism, word-of-mouth hiring, and similar practices might simply amount to "bad acts" which discriminate against all outsiders without having any disparate impact on racial or religious minorities. "Title VII is not a 'bad acts' statute" and does not proscribe that type of discrimination. *Holder v. City of Raleigh,* 867 F.2d 823, 828 (4th Cir.1989). However, when the work force is predominantly white, nepotism and similar practices which operate to exclude outsiders may discriminate against minorities as effectively as any intentionally discriminatory policy. *Bonilla,* 697 F.2d at 1303.

Thomas proved the existence of "artificial, arbitrary, and unnecessary barriers to employment [that] operate invidiously to discriminate on the basis of racial ... classifications." *Griggs,* 401 U.S. at 431, 91 S.Ct. at 853. Two of the Board's practices bear a causal relationship to her unsuccessful efforts to secure employment. They are the Board's practice of nepotism and the general practice of posting notice of vacancies only in the schools. Thomas did not learn of the vacancies until after they were filled. She is therefore entitled to injunctive relief to remedy these unlawful practices.

The district court's admonition, while well intentioned, fell short of affording the relief Title VII contemplates. Writing in *Hutchings v. United States Industries, Inc.,* 428 F.2d 303, 311 (5th Cir.1970), Judge Ainsworth explained:

The trial judge in a Title VII case bears a special responsibility in the public interest to resolve the employment dispute, for once the judicial machinery has been set in train, the proceeding takes on a public character in which remedies are devised to vindicate the policies of the Act, not merely to afford private relief to the employee.

The fact that Thomas did not bring a class action is of no moment. In *Sandford v. R.L. Coleman Realty Co.,* 573 F.2d 173 (4th Cir.1978), we held that it was unnecessary for an individual plaintiff, who is entitled to equitable relief, to amend the complaint to allege a class action in order to

obtain an injunction against racial discrimination, saying:

> This is so because the settled rule is that "[w]hether plaintiff proceeds as an individual or on a class suit basis, the requested [injunctive] relief generally will benefit not only the claimant but all other persons subject to the practice or the rule under attack."

573 F.2d at 178 (Russell, J., quoting 7 Wright & Miller, *Federal Practice and Procedure* § 1771, pp. 663–664 (1972)).

The district court quite properly found that Thomas did not offer sufficient statistical evidence to prove discrimination under the disparate impact theory by the means of statistics. The county's population is 98.2% white and 1.8% black. Black teachers constitute only .5% of the secondary schools' faculties. The Board's policy of generally limiting its pool of applicants to county residents, coupled with the lack of proof of the number of qualified applicants living in the county, other than Thomas, made the data base inadequate for statistical purposes. *See Ward Cove Packing Co. v. Atonio,* 490 U.S. 642, 109 S.Ct. 2115, 2121–24, 104 L.Ed.2d 733 (1989); *Hazelwood School District v. United States,* 433 U.S. 299, 308, 97 S.Ct. 2736, 2742, 53 L.Ed.2d 768 (1977). However, although disparate impact cases usually focus on statistics, *Watson,* 487 U.S. at 987, 108 S.Ct. at 2785, they are neither the exclusive nor a necessary means of proof. The paucity of statistics is no bar to the prospective injunctive relief Thomas seeks, for Thomas has proved by other means that the Board's hiring practices have a disparate impact on minorities and violate Title VII. She produced evidence of at least 46 cases of nepotism, a stipulation from the Board which revealed a practice of posting vacancies in schools and offices with public notice only in exceptional circumstances, and testimony from other black applicants which indicated they were not being given an opportunity to compete for teaching jobs, largely because the Board's practices of nepotism and word-of-mouth hiring kept them unaware of job openings.

## III

We affirm the district court's judgment insofar as it denies Thomas's claim that the Board intentionally discriminated against her when it failed to hire her.

Thomas has shown that as a prospective applicant she is entitled to injunctive relief to conform the Board's hiring policies to Title VII. We vacate the district court's judgment insofar as it dismisses her complaint and remand the case for further proceedings.

The district court is directed to fashion an injunction requiring the Board to publicly advertise vacancies and fill them by a selection process that is not influenced by race. The district court should also prohibit the Board from giving preference to relatives of employees. The court should prescribe any other conditions that it deems proper to achieve equality of employment opportunities without regard to race for all qualified applicants certified by the state. The court may limit the injunction to a reasonable number of years.

Each side, having substantially prevailed on appeal, shall pay its own costs and one-half the cost of the appendix. On remand the district court should award to Thomas appropriate counsel fees and costs for services in both trial and appellate courts with respect to the grant of prospective injunctive relief. *See Hensley v. Eckerhart,* 461 U.S. 424, 433–37, 103 S.Ct. 1933, 1939–41, 76 L.Ed.2d 40 (1983).

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED**