ROTHENBERG, J.
I. INTRODUCTION
The City of Miami (“City”) seeks certio-rari relief from a decision rendered by the Circuit Court for Miami-Dade County, Appellate Division (“Circuit Court”), affirming a final order entered by the Miami-Dade County Commission on Human Rights (“Commission”). The Commission found that the City’s police chief, Chief Timoney, engaged in disability discrimination by failing to appoint Miguel A. Hervís (“Lt.Hervis”), who has Parkinson’s disease, to serve as a Neighborhood Enhancement Team Commander (“NET Commander”). Because we conclude that the City was denied due process, and the Circuit Court departed from the essential requirements of law resulting in a miscarriage of justice, see Custer Med. Ctr. v. *1113 United Auto. Ins. Co., 62 So.3d 1086, 1095 (Fla.2010); Haines City Cmty. Dev. v. Heggs, 658 So.2d 523, 530 (Fla.1995), we grant the petition, quash the opinion of the Circuit Court, and remand with directions.
II. FACTUAL AND PROCEDURAL HISTORY
Lt. Hervis has been serving as a police officer with the City since 1988. He was promoted to the rank of sergeant in 1994, and to the rank of lieutenant in 2001. From April to November 2001, he served as the acting Commander in the Strategic Information Unit of the Special Investigations Section, and is currently a Commander in the Domestic Violence Unit. In 2004, Lt. Hervis was diagnosed with Parkinson’s disease, and shortly thereafter, symptoms of his condition became evident to his coworkers and superiors, including Chief Ti-money. Although Chief Timoney realized that Lt. Hervis’ motor skills were impaired, he' did not know that Lt. Hervis had Parkinson’s disease or what was causing the symptoms he observed. Over the next two years, Chief Timoney observed Lt. Hervis’ condition progressively worsen, and by the middle of 2006, Chief Timoney became concerned about Lt. Hervis’ fitness for duty and his ability to handle a firearm. Chief Timoney therefore scheduled a meeting with Lt. Hervis and the Chief of Health Services, Deputy Chief Burden, for January 3, 2007, to discuss the situation.[1]
At that meeting, Lt. Hervis informed Chief Timoney and Deputy Chief Burden that he had Parkinson’s disease, admitted he was experiencing difficulties with his motor skills, and told them that he was scheduled to undergo a surgical procedure in a month which he hoped would alleviate some of the symptoms. Lt. Hervis contends that at this meeting, Chief Timoney ordered him to submit to a “fitness for duty” examination, but then agreed to permit Lt. Hervis to delay taking the examination until after he had the surgical procedure. Chief Timoney wished Lt. Hervis well and instructed him to follow up with Deputy Chief Burden to inform them of the results of the procedure. Lt. Hervis eventually had the scheduled procedure, which proved to be a success. Thereafter, he took the fitness for duty examination, and was cleared for duty.
In July 2006, prior to meeting with Chief Timoney and Deputy Chief Burden, and while Lt. Hervis was experiencing loss of his motor skills, he requested to be considered for the position of NET Commander. The record reflects that the City’s police department has no formal application process for such promotions, which are made solely at the discretion of the Chief of Police, with the approval of the City Manager. Appointments are made based on the individual’s work history, recommendations, past performance, and other factors. Recommendations can come from individuals outside of the City of Miami Police Department or internally. But ultimately, the decision rests with the Chief of Police.
The NET Commander position is an executive-level position that is described as requiring independence of action and judgment. The NET Commander coordinates police related services at the neighborhood level and requires the supervision of staff, including officers and community providers; speaking to various audiences about *1114 police related issues; attending homeowner meetings; composing communications; developing operational plans; and responding to natural disasters or other emergencies within the neighborhood.
In December 2006, prior to Lt. Hervis undergoing the surgical procedure, three other officers with equal experience and seniority were promoted to the position of NET Commander. After the surgical procedure was performed, Lt. Hervis’ condition substantially improved, and in the summer of 2008, he was cleared for normal duty, with no restrictions. In the interim, on June 15, 2007, Lt. Hervis filed a Notice of Charge of Discrimination (“charge”), alleging disability discrimination with the Commission. Lt. Hervis contended he was passed over for promotion because of his disability, Parkinson’s disease. The Commission assigned the investigation of the charge to the Miami-Dade County Equal Opportunity Board (the “Board”).
The Board investigated the charge and issued a Recommended Order on December 29, 2008, finding that Lt. Hervis had presented a prima facie case of employment discrimination. Specifically, the Board found that: (1) the record established that Lt. Hervis was a qualified individual with a disability; (2) although the City has no formal application process for promotions to the position of NET Commander, Lt. Hervis asked to be considered for the position; (3) Lt. Hervis was not promoted to NET Commander; and (4) individuals with similar qualifications, who had no known disability, were promoted to NET Commander positions. The Board recognized the City’s legitimate concern regarding Lt. Hervis’ ability to perform his job, which requires that he carry a firearm, but found that based on the medical documentation in the record, which indicates that Lt. Hervis was able to perform his duties without restrictions or accommodations, his disability did not pose a direct threat to him or others. Consequently, the Board recommended that Lt. Hervis be promoted to the next available NET Commander position, compensated for the pay differential retroactive to May 2007, with interest, and reimbursed for his reasonable attorney’s fees and costs.
Pursuant to Chapter 11A-8 of the Miami-Dade County Code, the City requested a de novo hearing, which was held on June 11, 2009, before a hearing officer. Testifying on behalf of the City were Chief Timo-ney and Deputy Chief Burden.
The portion of the transcript that was supplied by the Commission, and which was included in the record on appeal,[2] reflects that Chief Timoney testified that appointments to the position of NET Commander are within his discretion, seniority is only one of the factors he considers, and there were legitimate non-discriminatory reasons why he did not appoint Lt. Hervis to the position of NET Commander. Chief Timoney also testified that he did not consider Lt. Hervis for a NET Commander position because at an important briefing during the Free Trade Area of the Americas (“FTAA”), Lt. Hervis, unlike the officers that conducted the briefings on the two preceding days, performed very poorly. Chief Timoney explained that Lt. Her-vis appeared unprepared, confused, and unfamiliar with the facts, and his presentation was “embarrassing.” Based on Lt. Hervis’ performance, he insisted that either of the other two officers that had conducted the earlier briefings be assigned to the remaining briefings. Chief Timoney testified that the officers he appointed to *1115 the NET Commander positions demonstrated leadership and “stood out” as candidates for the position and went on to explain his experiences and observations of the individuals he promoted to NET Commander positions. Thus, Chief Timoney provided legitimate, non-discriminatory reasons for not appointing Lt. Hervis to the position of NET Commander.
The hearing officer entered his Final Order on July 13, 2009, finding that, although there was no direct evidence of disability discrimination, there was circumstantial evidence that the City discriminated against Lt. Hervis due to his disability. Specifically, the hearing officer found that Chief Timoney admitted that based on Lt. Hervis’ symptoms, he questioned whether he was fit for duty as a police officer, and thus the obvious conclusion would be that he would not promote someone he believed was not fit for duty. Chief Timoney testified that he did not promote Lt. Hervis because he had performed so poorly at the FTAA briefing, Lt. Hervis did not dispute this testimony and the Board did not find that Chief Timoney’s explanation of why he did not promote Lt. Hervis was a pretext. However, the Commission noted that Lt. Hervis had received “satisfactory evaluations,” which the City failed to refute. Thus, the Commission adopted the Recommended Order submitted by the Board.
The City appealed to the Circuit Court. After the record was prepared by the Commission and provided to the Circuit Court, the City notified the Commission that a transcript of the hearing was not included in the record, and requested from the Commission a copy of the hearing transcript, at its own expense, pursuant to section llA-28(9)(b) of the Miami-Dade County Code. In response, the Commission sent the City an inaudible tape recording of the proceedings. Thereafter, the City filed a motion with the Circuit Court requesting that it issue an order requiring the Commission to comply with its obligation to provide a transcript of the hearing. The Circuit Court granted the City’s motion. The Commission, however, provided the Circuit Court with an incomplete transcript, which omitted a portion of Chief Timoney’s testimony and all of Deputy Chief Burden’s testimony. The City objected to the incomplete transcript. The Circuit Court, however, affirmed the Commission’s order, without written opinion, and this petition for second-tier certiorari review followed.
III. STANDARD OF REVIEW
On second-tier certiorari review, this Court’s inquiry is limited to whether the Circuit Court afforded procedural due process and whether the Circuit Court applied the correct law. Custer, 62 So.3d at 1092,1100. We recognize that it is not the function of this Court on second-tier cer-tiorari to correct error or to reweigh the evidence. However, where the lower tribunal violates a clearly established principle of law resulting in a miscarriage of justice, or the petitioner was denied due process of law, the district court may exercise its discretionary certiorari jurisdiction. Id.
IV. ANALYSIS
A. The City Was Denied Procedural Due Process
Section llA-28(9)(b) of this Miami-Dade County Code, titled: “Procedures for employment discrimination complaints,” provides that “[tjestimony taken at a hearing shall be under oath and a transcript shall be made available at cost to any interested party.” On January 29, 2010, the City requested that the Clerk of the Commission provide the City with a transcript at the City’s cost. The Commission, however, provided the City with an inaudible tape. *1116 The City filed a motion with the Circuit Court seeking to compel compliance with section llA-28(9)(b), which the Circuit Court granted. The Commission, however, failed to comply with the Circuit Court’s order and section HA-28(9)(b), by only providing the testimony of Lt. Hervís, a portion of Chief Timoney’s testimony, and none of Deputy Chief Burden’s testimony.
Because the Commission was required to conduct a de novo review, and Chief Timoney and Deputy Chief Burden’s testimony was material and critical, there is no possibility that the Circuit Court was able to provide meaningful review of the Commission’s findings, thus depriving the City of the most basic due process protections. De novo review requires review of the entire record. De novo review is not possible without the complete record. We therefore conclude that the Circuit Court departed from the essential requirements of law by affirming the Commission’s order absent a complete record over the City’s objection.
We also conclude that the failure of the Commission to provide the City with the entire transcript, specifically the testimony of Deputy Chief Burden and portions of Chief Timoney’s testimony, requires remand to the Circuit Court for reconsideration of the City’s appeal. Upon remand, if the transcript or a statement of the evidence filed pursuant to Florida Rule of Appellate Procedure 9.200(b)(4) cannot be provided, a new evidentiary hearing is required. See Gordon v. Gordon, 944 So.2d 527, 527 (Fla. 4th DCA 2006) (reversing order of contempt and remanding for a new hearing where the court reporter lost approximately twenty-five pages of the transcript of the evidentiary hearing); Jackson v. Echols, 987 So.2d 1247, 1249 (Fla. 3d DCA 2006) (relinquishing jurisdiction to afford appellant an opportunity to obtain a statement of the evidence pursuant to Florida Rule of Appellate Procedure 9.200(b)(4), where transcript was unavailable through no fault of the appellant, and ultimately reversing for a new hearing when neither a transcript nor a stipulated statement of the evidence could be obtained); D.G. v. Dep’t of Children & Families, 835 So.2d 408, 408-09 (Fla. 2d DCA 2003) (remanding for a new trial where court reporter determined that the tape recordings of the children’s testimony were blank and D.G. was prejudiced by this omission in the record through no fault of his own); Peretz v. State, 710 So.2d 754, 755 (Fla. 4th DCA 1998) (reversing and remanding for a new hearing where transcript of involuntary commitment hearing could not be produced due to technological failure of the recording equipment and the record could not be reconstructed).
B. The Circuit Court Departed from the Essential Requirements of Law
There are two different avenues upon which a plaintiff may allege intentional discrimination: (1) disparate treatment; and (2) pattern or practice discrimination. Denney v. City of Albany, 247 F.3d 1172, 1182 (11th Cir.2001). Lt. Her-vis’ claim is based on disparate treatment. Disparate treatment claims require proof of discriminatory intent through direct or circumstantial evidence. Id. at 1182-83; see also Harris v. Shelby Cnty. Bd. of Educ., 99 F.3d 1078, 1083 (11th Cir.1996). The Commission’s order concluded, as did the Board in its recommended order, that Lt. Hervís did not present direct evidence of discrimination. Thus, Lt. Hervís was required to prove intentional discrimination through the McDonnell Douglas paradigm for circumstantial evidence claims. Denney, 247 F.3d at 1182 (citing McDonnell Douglas, Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)).
*1117 In McDonnell Douglas, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the United States Supreme Court established the order and allocation of proof in circumstantial evidence cases alleging discrimination. The plaintiff must first establish a prima facie case of discrimination. Id. at 802, 93 S.Ct. 1817. This is accomplished by proving, in this context, that: (1) Lt. Hervis is a member of a protected class; (2) he was qualified for and applied for the position; (3) he was not promoted despite his qualifications; and (4) the City filled the position or continued to seek applicants with the same qualifications but who had no known disability. Id.; see also Denney, 247 F.3d at 1183 (applying McDonnell Douglas to failure to promote cases).
If the plaintiff establishes a prima facie case of discrimination, it raises a presumption or inference that the employer unlawfully discriminated against the employee. Texas Dep’t of Cmty. Affairs v. Burdine, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). This is because “we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.” Burdine, 450 U.S. at 254, 101 S.Ct. 1089 (quoting Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978)).
If the plaintiff establishes a prima facie case of discrimination, the defendant must articulate some legitimate, nondiscriminatory reason for the adverse employment action. McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. 1817. The defendant’s burden is a burden of production, not persuasion, and it involves no credibility assessment. St. Mary’s Honor Ctr. v. Hicks, 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); Burdine, 450 U.S. at 255, 101 S.Ct. 1089 (“If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted.”) (footnote omitted). “The presumption, having fulfilled its role of forcing the defendant to come forward with some response, simply drops out of the picture.” St. Mary’s Honor Ctr., 509 U.S. at 510-11, 113 S.Ct. 2742 (citation omitted); see City of Hollywood v. Hogan, 986 So.2d 634, 644 (Fla. 4th DCA 2008) (finding that “credibility is not an issue at [this] juncture” where the burden “shifted to the City to provide an explanation that [police officers] were rejected or other officers were preferred for promotion for a legitimate non-discriminatory reason”).
Where the defendant meets its burden of presenting legitimate,. non-discriminatory reasons for the adverse employment action, the plaintiff, who bears the ultimate burden of demonstrating that the defendant intentionally discriminated against him, must prove that the reasons articulated were false and that the discrimination was the real reason for the defendant’s actions. St. Mary’s Honor Ctr., 509 U.S. at 515, 113 S.Ct. 2742 (“[A] reason cannot be proved to be ‘a pretext for discrimination ’ unless it is shown both that the reason was false, and that discrimination was the real reason.”) (emphasis in original); Fla. State Univ. v. Sondel, 685 So.2d 923, 926 (Fla. 1st DCA 1996) (“The Petitioner must prove that the reason articulated by the Respondent was false and that discrimination was the real reason for the Respondent’s actions.”). In other words, Hervis must “present significant probative evidence that the articulated reason is merely a pretext for discrimination.” Elrod v. Sears Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir.1991); see also Reheiser v. Terminix Int’l. Co. Ltd. P’ship, 509 F.Supp.2d 1147, 1152 (N.D.Fla. 2007).
There is no dispute, and the incomplete record does clearly reflect, that Lt. Hervis met his burden of establishing a *1118 prima facie case of discrimination. He demonstrated that, because of his disability, he is a member of a protected class; he was qualified to serve as a NET Commander; and he applied for the position, but the position was filled with other individuals with similar qualifications. The record is also clear that the City met its burden of production by articulating sufficient non-discriminatory reasons for its promotion decisions, thereby rebutting the presumption created by Lt. Hervís’ establishment of a prima facie case. However: (1) Lt. Hervís never attempted to prove that the reasons articulated by Chief Ti-money in making his employment decisions were false; (2) the Commission’s order failed to address the absence of this legal requirement; (3) the Commission’s order failed to make a finding that the reasons articulated by Chief Timoney were a pretext; and (4) the Commission’s order improperly shifted the burden to the City to prove lack of pretext. For these reasons, we find that the Circuit Court departed from the clearly established requirements of law in affirming the Commission’s order.
1. Lt. Hervís failed to offer any evidence to rebut the legitimate non-discriminatory reasons articulated
Chief Timoney testified that he observed Lt. Hervís’ performance at an FTAA briefing. Unlike the briefings conducted by two other officers on the days preceding Lt. Hervís’ briefing, Lt. Hervis’ “briefing was downright embarrassing. It made no sense.” Chief Timoney demanded that one of the other two officers conduct the briefing the following day.
Chief Timoney also testified as to the qualifications of other police officers he promoted to the position of NET Commander: Lt. Fernandez, Lt. Herbello, Lt. Martin, Lt. Jones, and Lt. Sanchez. Chief Timoney testified that he promoted Lt. Fernandez to a NET Commander position in December 2006. He described Lt. Fernandez as “a pretty impressive fellow with a command presence, who was on top of things, [and] left nothing to chance.” Chief Timoney explained that he had a great deal of contact with Lt. Fernandez because Lt. Fernandez was working in the downtown area. Further, prior to being promoted to lieutenant, Lt. Fernandez was a sergeant of the detectives, and while some officers have difficulty transitioning into the field, Lt. Fernandez was very impressive.
Chief Timoney testified that he also promoted Lt. Herbello to a NET Commander position in December 2006, based on his excellent work in the detective division of the gang unit, where Lt. Herbello worked closely with the homicide unit, solving both homicide and narcotics cases. Chief Timo-ney was also impressed with Lt. Herbello’s enthusiasm and the respect other officers had for Lt. Herbello. Chief Timoney explained that Lt. Herbello was assigned as a NET Commander to the Allapattah area, which is one of the toughest areas in the City; he is doing an excellent job; and his promotion turned out to be one of his best promotions.
Lt. Martin also served as a sergeant in detectives. Chief Timoney testified that he knew Lt. Martin quite well because when he was appointed to a lieutenant position, he worked special operations and Chief Timoney often interacted with him and found him to be well-prepared.
Chief Timoney promoted Lt. Ethel Jones to a NET Commander position in 2007. Prior to the promotion, Lt. Jones worked in Internal Affairs, she worked directly for Chief Timoney, and they met on a daily basis. He explained that due to the sensitivity associated with internal affairs investigations, only high caliber officers were assigned to the unit. Further, *1119 Lt. Jones’ supervisor in the Internal Affairs Department spoke very highly of her.
The last officer Chief Timoney promoted to a NET Commander position was Lt. David Sanchez in 2008. Lt. Sanchez ran the narcotics division for two years, which Chief Timoney explained was the most dangerous unit and very corruption prone. He found that Lt. Sanchez had a lot of guts, did a great job running the unit, was always prepared, and immediately responded to complaints.
Chief Timoney testified that of the fifty-three lieutenants in the Department, there are over a half dozen with more seniority than Lt. Hervis, who, like Lt. Hervis, have not been promoted to NET Commander positions. Further, there are two captains (captains are higher ranked than lieutenants) who have more seniority than Lt. Hervis, and they have not been promoted to NET Commander positions. Chief Ti-money testified that his decision not to promote Lt. Hervis to a NET Commander position had absolutely nothing to do with the fact that Lt. Hervis has Parkinson’s disease; rather it was based on his observation of Lt. Hervis during his FTAA briefing.
Lt. Hervis, who testified at the hearing, did not dispute that he performed poorly at the FTAA briefing or suggest that the other officers appointed to NET Commander positions were unqualified. Thus, he failed to refute that Chief Timo-ne/s reasons for promoting officers Fernandez, Herbello, Martin, Jones, and Sanchez were false. Because Lt. Hervis failed to meet his burden as required by McDonnell Douglas, St. Mary’s Honor Center, and Sondel, the Commission clearly erred in finding disability discrimination, and the Circuit Court departed from the essential requirements of law in affirming the order under review.
2. Lt. Hervis also failed to prove that discrimination was the real reason for the City’s employment decisions
Although Lt. Hervis’ failure to offer any evidence to establish that the reasons articulated by Chief Timoney were false is dispositive, we briefly address the second prong of Lt. Hervis’ burden in proving pretext. Lt. Hervis claims Chief Timoney was aware in 2006 that he wished to be considered for a NET Commander position, but Chief Timoney did not appoint Lt. Hervis due to his disability. In support of his claim, Lt. Hervis argues that Chief Timoney was aware of his disability, and he was equally or more qualified for the position than those appointed.
The record reflects, however, that in 2006, when Lt. Hervis “applied” for the position, he was experiencing loss of his motor skills and Chief Timoney became concerned whether Lt. Hervis could perform his duties as a police officer. Chief Timoney, who was unaware that Lt. Her-vis had Parkinson’s disease, scheduled a meeting with Lt. Hervis to determine what was causing the problem and to request that Lt. Hervis submit to a fitness for duty examination. At this meeting in January 2007, Lt. Hervis informed Chief Timoney that he had Parkinson’s disease and disclosed that he was having difficulty with his motor skills. Lt. Hervis, however, requested to delay his fitness for duty examination because he was going to undergo a medical procedure that he hoped would alleviate the symptoms. Chief Timoney agreed to delay the examination, and Lt. Hervis had the surgery, which substantially improved his symptoms.
In the recommended order submitted by the Board, which was adopted by the Commission, the hearing officer specifically found that:
[The City] had a legitimate concern about [Lt. Hervis’] ability to perform *1120 his job. [Lt. Hervis] is a sworn officer holding the rank of Lieutenant and is required to carry a gun. Although not raised by the [City] as a defense, an employer reserved the right to not hire him or retain an individual with a disability if it can be proven that the individual’s employment would pose a direct threat to the individual or others,
(emphasis added).
Thus, because the Commission found that the City had a legitimate concern in 2006 regarding Lt. Hervis’ ability to perform his job, failure to promote him until he was cleared for duty after undergoing a fitness for duty examination cannot and does not establish employment discrimination. The record reflects that Lt. Hervis was not cleared for duty until after his operation and after his examination in August of 2008. Thus, from mid-2006 until August 2008, based on the hearing officer’s findings, the City’s failure to promote Lt. Hervis was legitimate, not a pretext. As all of the promotions were made during this time frame (three in December 2006, one in 2007, and one in 2008), Lt. Hervis did not establish pretext, and the recommendation that Lt. Hervis be promoted to NET Commander and be paid the wage differential between the two positions retroactive to May 2007, has no basis in fact or law.
Lt. Hervis also failed to prove that he was as qualified or more qualified than those who were promoted. Although Lt. Hervis submitted nearly all of his yearly performance evaluations, he failed to submit the most critical evaluation — the evaluation for the period of November 1, 2005 through November 1, 2006. Thus, his performance during this critical period of time cannot be compared with that of the three officers promoted in December 2006. And the comparison of Lt. Hervis’ performance evaluation for the time period of November 1, 2006 through October 81, 2007, with Lt. Jones’ evaluation for the same time period reflects that Lt. Jones, who was promoted on May 15, 2007, received a substantially higher evaluation.
Additionally, the case law establishes that a plaintiff cannot prove pretext merely by asserting that he was better qualified. Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1090 (11th Cir.2004); Dancy-Pratt v. Sch. Bd. of Miami Dade Cnty., No. 00-1382, 2001 WL 1922063, *7 (S.D.Fla. Dec.13, 2001); see also Cofield v. Goldkist, Inc., 267 F.3d 1264, 1269 (11th Cir.2001) (holding that qualifications must be so superior that a reasonable fact-finder would conclude reason given for hiring another was pretextual); Deines v. Texas Dep’t of Protective & Regulatory Servs., 164 F.3d 277, 280-81 (5th Cir.1999) (holding that “disparities in qualifications must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question”).
Chief Timoney testified that, although he considered seniority in making his promotion selections, there were many other factors he considered as well, including the individual’s leadership skills. Such subjective reasons are sufficient, if legitimate. See City of Hollywood v. Hogan, 986 So.2d 634, 644 (Fla. 4th DCA 2008); Chapman v. AI Transp., 229 F.3d 1012, 1034 (11th Cir.2000) (finding that “[a] subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion”).
Chief Timoney specifically articulated the reasons why he promoted others over Lt. Hervis. The reasons included Lt. Hervis’ poor performance at the FTAA briefing, and the promoted officers’ *1121 leadership skills, preparation, performance, and other positive attributes he observed. The reasons he articulated were sufficiently specific, legally sufficient, and nondiscriminatory. As noted in Chapman:
[CJourts “do not sit as a super-personnel department that reexamines an entity’s business decisions. No matter how medieval a firm’s practices, no matter how high-handed its decisional process, no matter how mistaken the firm’s managers, the ADEA [Age Discrimination in Employment Act] does not interfere. Rather our inquiry is limited to whether the employer gave an honest explanation of its behavior.”
Id. at 1030 (quoting Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir.1991) (other citations omitted)); see also Pennington v. City of Huntsville, 261 F.3d 1262, 1267 (11th Cir.2001) (concluding that “ ‘a plaintiff employee may not establish that an employer’s proffered reason is pretextual merely by questioning the wisdom of the employer’s reason,’ ” as long as ‘the reason is one that might motivate a reasonable employer’ ”) (quoting Combs v. Plantation Patterns, 106 F.3d 1519, 1543 (11th Cir.1997)).
3. The Commission improperly shifted the burden to the City to prove lack of pretext
The Commission noted in its order that Chief Timoney testified that he did not promote Lt. Hervis due, in part, to his terrible performance at the FTAA briefing (which the Commission incorrectly characterized as a NET Commander meeting). However, the Commission concluded that because the City did not contradict the record evidence showing Lt. Hervis’ satisfactory evaluations, “we find the City of Miami did discriminate against Lt. Hervis because of his disability.”
The Commission impermissibly shifted the burden to the City to prove lack of pretext. Additionally, the Circuit Court departed from the essential requirements of law by affirming the Commission’s order where its finding regarding discrimination was based on the City’s failure to disprove discrimination, rather than on Lt. Hervis’ satisfaction of his burden to prove that the nondiscriminatory reasons articulated by Chief Timoney were false and his decision was based on disability discrimination. As this Court noted in Department of Children & Family Services v. Garcia, 911 So.2d 171, 172 (Fla. 3d DCA 2005), because the Department of Children and Family Services presented legitimate non-discriminatory evidence that Garcia had been discharged for misconduct, not gender discrimination, Garcia was required to make an “affirmative showing that the employer had used those grounds only as an excuse or ‘mere pretext’ for what was really motivated by gender discrimination.” Id. at 172 (citing Scholz v. RDV Sports, Inc., 710 So.2d 618, 624 (Fla. 5th DCA 1998) (holding that “[i]f the defendant responds by adequately explaining its rationale, the plaintiff, in order to prevail, must present evidence that the defendant’s proffered reasons are merely pretexts for discrimination.”) (emphasis added)); Gray v. Russell Corp., 681 So.2d 310, 312 (Fla. 1st DCA 1996) (finding that the plaintiffs have the burden to prove by a preponderance of the evidence that the employer’s articulated reasons for discharging the plaintiffs were pretextual); Morris v. Emory Clinic, Inc., 402 F.3d 1076, 1081 (11th Cir.2005) (holding that if the former employer offers a legitimate explanation for the adverse action, the plaintiff must show the explanation was a mere pretext); Rojas v. Florida, 285 F.3d 1339, 1342 (11th Cir.2002) (“Because [former employer] has met its burden of presenting a legitimate, nondiscriminatory reason for its act, [former employee] bears the burden of showing that the reasons *1122 offered were merely pretext.”) (emphasis added).
V. CONCLUSION
The Circuit Court, acting in its appellate capacity, failed to afford the City procedural due process when it affirmed the findings of the Commission without the benefit of the full transcript, through no fault of the City, and over its objection. The prejudice is obvious. The missing portions of the transcript are portions of Chief Timoney’s testimony and all of Deputy Chief Burden’s testimony. This ground alone is sufficient to grant the instant petition.
We additionally find, however, that cer-tiorari relief is warranted in this case because the Circuit Court departed from the essential requirements of law in affirming the Commission’s findings where Lt. Her-vís failed to offer any evidence that the reasons articulated by Chief Timoney in making his promotion decisions were false and that his decision not to promote Lt. Hervís was not legitimate and was a pretext; the Commission applied the wrong standard in evaluating Lt. Hervís’ claim; and the Commission improperly shifted the burden to the City to prove lack of pretext.
These errors are “grievous errors” resulting in a miscarriage of justice. The Circuit Court was left with an incomplete picture of the evidence presented; the City is being ordered to promote Lt. Her-vís to the next available NET Commander position and to grant Lt. Hervís the wage differential between his position as a Lieutenant and that of a Commander, retroactive to May 2007[3]; and the City is required to reimburse Lt. Hervís for his attorney’s fees and to pay him the interest on his lost wages.
We therefore grant the petition and quash the Circuit Court’s decision. Upon remand, the parties are to be given the opportunity to obtain a complete transcript or a stipulated statement of the evidence. If neither can be produced then the City is entitled to a new evidentiary hearing. Upon the submission of either a stipulated statement of the evidence or a complete transcript of the prior evidentiary hearing, or of a new evidentiary hearing, the Circuit Court is reminded that it must perform a review that complies with McDonnell Douglas and the cases cited herein.
Petition granted; decision quashed; remanded with directions.
SALTER, J., concurs.

. The delay in scheduling a meeting with Lt. Hervis was because initially Chief Timoney attempted to find someone in the Department who was close to Lt. Hervis and was willing to approach Lt. Hervis and ask him what the problem was. When Chief Timoney was unable to find anyone willing to make the inquiry, he decided to wait until after the holidays (Christmas and New Year’s Eve) to schedule the meeting.

. One of the grounds raised in this petition is the failure of the Commission to provide a complete record of the hearing, which will be discussed in detail in the analysis portion of this opinion.

. The order requires retroactive pay to May 2007 despite the Board's finding that the City’s concerns regarding Lt. Hervís’ fitness to serve as a police officer were legitimate. Since Lt. Hervis was not cleared for duty until August 2008, retroactive application to May 2007, although not grounds for certiorari relief, was clearly error.